## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HEALTHQUEST OF CENTRAL JERSEY, LLC**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**ANTARES AUL SYNDICATE 1274**, *et al.*,<br><br>Defendants. | Civil Action No. 18-12375 (ZNQ) (DEA)<br><br>**MEMORANDUM OPINION** |

### QURAISHI, District Judge

This matter comes before the Court upon cross Motions in Limine (the "Motions") filed by Plaintiffs Healthquest of Central Jersey, LLC and Diamond Nation, LLC (collectively, "Plaintiffs") and Defendants Antares Aul Syndicate 1274, Liberty Syndicate Lib 4472, Rockhill Insurance Company, and International Insurance Company of Hanover Se. (collectively, "Defendants"). (ECF Nos. 61, 62.) Plaintiffs filed a Memorandum of Law in support of their Motion. (Pls.' Moving Br., ECF No. 61-2). Defendants opposed Plaintiffs' Motion, (Defs.' Opp'n, ECF No. 63), to which Plaintiffs replied, (Pls.' Reply, ECF No. 65). Defendants also filed a Memorandum of Law in support of its Motion. (Defs.' Moving Br., ECF No. 62-1). Plaintiffs opposed Defendants' Motion (Pls.' Opp'n, ECF No. 64), to which Defendants replied, (Defs.' Reply, ECF No. 66). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, Plaintiffs' Motion is granted in part and denied in part. Defendants' Motion is also granted in part and denied in part.

1

I.      **BACKGROUND**

The facts of this case have been set forth in a previous summary judgment opinion, (ECF No. 50), and the Court incorporates those facts herein.  As such, only a brief recitation of the facts is necessary.  Plaintiffs, Healthquest of Central Jersey, LLC ("Plaintiff Healthquest"), and Diamond Nation, LLC ("Plaintiff Diamond"), respectively operate a health and fitness club along with a sports and training facility.  (*Id.* at 2.)  Plaintiff Diamond owns property in Flemington, New Jersey, which includes an outdoor baseball field.  (*Id.* at 2.)  During the winter months, from November through April, the baseball field is covered by an air-supported dome structure ("Original Dome").  (*Id.*)  During a winter storm in January of 2016, the Original Dome failed, and Plaintiff Diamond had a replacement dome ("Replacement Dome") constructed.  (*Id.* at 2–3.)

At some point, Plaintiffs obtained insurance coverage ("Policy") from Defendants, which was effective from November 3, 2016, through April 15, 2017.  (*Id.* at 3.)  The Policy covered "external risks of direct physical loss unless the loss [wa]s limited or caused by a peril that [wa]s excluded." (*Id.*)  Under the Policy, "collapse" constitutes an excluded peril, which the Policy does not cover.  However, the Policy does cover a collapse if it occurs because of a "specified peril," "hidden decay; hidden insect or vermin damage," "weight of people or business property," "weight of rain that collects on a roof," or "the use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of construction, remodeling, or renovation." (*Id.*)  The Policy also does not cover a loss that results from an error in "design, specification, construction, workmanship, installation, or maintenance of property." (*Id.*)  The Policy provides coverage during "the 'restoration period,'" which is when a business is interrupted by a loss to the building property because of a "covered peril." (*Id.*)

On March 14, 2017, the Replacement Dome collapsed after a severe winter storm passed the area. (*Id.*) That same day, Plaintiff Healthquest notified Defendants of the collapse and sought coverage under the Policy. (*Id.* at 4.) In July 2017, Defendants denied Plaintiffs' claim for coverage of damages based on the Policy's exclusions. (*Id.*) In response, Plaintiffs filed this instant suit. (*Id.* at 5.)

## II.     <u>LEGAL STANDARD</u>

A motion in limine allows the trial court to rule on the admissibility and relevance of the evidence. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). This motion is designed "to bar irrelevant, inadmissible, and prejudicial issues from being introduced at trial, thus narrow[ing] the evidentiary issues for trial." *Id.*; *Leonard v. Stemtech Health Sciences, Inc.*, 981 F.Supp.2d 273, 276 (D.Del. 2013). In certain situations, a trial court should defer ruling on an evidentiary issue if the nature of the relevance of the evidence is unclear before trial. *Am. Home Assur. Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324 (3d Cir. 1985). However, a district judge is free and can exercise sound discretion to alter a previous in limine ruling. *Luce v. United States*, 469 U.S. 38, 41–42 (1984).

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. "Evidence is irrelevant only when it has no tendency to prove [a consequential fact]." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004) (quoting *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994)). Courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."
Fed. R. Evid. 403.

### III.   DISCUSSION

#### A. Plaintiffs' Motions in Limine

##### 1. Motion to preclude evidence and testimony as to the Original Dome and prior insurance claim

Both Plaintiffs and Defendants seek to preclude and introduce evidence of the Original
Dome. (*See* Defs.' Moving Br., ECF No. 62-1; Pls.' Opp'n Br., ECF No. 64; Defs' Reply, ECF
No. 66.) [1]  Because many of Defendants' arguments are largely similar to those made in their
opposition to Plaintiffs' motion, the Court will summarily address those here to eliminate
redundancy. (Defs.' Moving Br. at 5–9; Pls.' Opp'n at 1–5.)[2] After a careful review of the parties'
submissions, all evidence of the Original Dome and prior insurance claim will be excluded for
reasons stated herein.

##### i. Relevancy

The Court finds that although evidence of the Original Dome and insurance claim are
relevant, they are nonetheless inadmissible under Federal Rule of Evidence 403.  The threshold
for determining the relevancy of evidence is low.  *See, e.g., Forrest v. Parry*, 930 F.3d 93, 114 (3d
Cir. 2019) (explaining that the standard of relevancy under the federal rules is low); *Failla v. City
of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) ("The test of relevance under the Federal Rules of
Evidence is low."); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 783 (3d Cir. 1994) (describing

---

[1]  The Court will not state the arguments Defendants iterated in their moving brief because they are almost identical
to those made in their Opposition and to do so would be redundant.

[2]  The Court notes that Plaintiffs filed their motion seeking to exclude both evidence of the Original Dome and prior
insurance claim.  However, Defendants conceded both in their opposition and moving briefs that evidence of the
prior insurance claim should be inadmissible.  The Court will, therefore, only address whether evidence of the
Original Dome should be admitted.

the Federal Rules as having a "low threshold of relevancy"). The Third Circuit has also stated that "Rule 401 does not raise a high standard." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 109-10 (3d Cir. 1999), *cert. denied*, 528 U.S. 1074 (2000).

Plaintiffs argue that evidence of both the Original Dome and insurance claim should be excluded because it is "irrelevant, misleading, confusing and would unfairly prejudice the Plaintiffs." (Pls.' Moving Br. at 13-14.) Plaintiffs specifically argue that the issue presently before the Court is the cause of the Replacement Dome's failure—not the cause of the Original Dome's failure. (*Id.*) Plaintiffs further argue that evidence of the prior collapse and insurance claim has no bearing on the question of the design of the Replacement Dome and, therefore, is irrelevant. (*Id.* at 15.) In opposition, Defendants argue that evidence of the Original Dome is relevant and should be admissible because both domes failed and collapsed during a winter storm and failure of the Original Dome supports their position on the issue of causation as to the Replacement Dome's failure. (Defs.' Opp'n at 1.)

In their reply, Plaintiffs' argument sought to distinguish a case relied upon by Defendants, *Ramos v. Liberty Mutual Insurance Co.*, 615 F.2d 334 (5th Cir. 1980). (Pls.' Reply at 2.) In that case, the court allowed evidence of the collapse of two telescoping oil derricks because the cause of the first collapse was a "known defect," which Plaintiffs argue is not the case here. (*Id.*) Further, in that case, the plaintiffs' expert established that the cause of the first collapse was also the cause of the second collapse, thereby showing that evidence of the first collapse was relevant. (*Id.*) However, in the present case, Plaintiffs argue there is no known design defect of the Original Dome. (*Id.*) Plaintiffs add that if Defendants want to introduce evidence of failure of the Original Dome to prove a design flaw was the cause, then Defendants must show a design flaw caused the Original Dome's collapse, like in *Ramos*. (*Id.*) In the alternative, Plaintiffs also argue that if

5

evidence of the Original Dome's collapse is admitted, then the prior insurance claim should also be admitted because Plaintiffs should be given the opportunity to rebut any evidence of the Original Dome's collapse using the Westchester Department's investigation into the prior collapse. (*Id.* at 5.)

The Court finds that evidence of the Original Dome and its collapse is relevant to the instant litigation.  The parties agree that the primary issue, in this case, involves the cause of the present collapse.  (Pls.' Moving Br. at 14; Defs.' Opp'n at 5.)  Specifically, the parties dispute whether the failure of the Replacement Dome in March of 2017 was caused solely by the weight of snow and ice, a combination of a defective design along with the weight of snow and ice, or neither.  Plaintiffs contend that the weight of the accumulated snow and ice caused the Replacement Dome to collapse, not a defective design.  (*See* Pls.' Moving Br. at 15.)  Defendants, however, argue that a design defect caused the collapse and relied on expert Eric Cunningham's report for the assertion that the Replacement Dome collapsed under weather conditions that it had been designed to withstand.  (Defs.' Opp'n at 2.)  Here, evidence of the Original Dome is relevant to potentially show a possible pattern—that both domes collapsed in the same manner.  This fact, if proven, would bolster the Defendants' arguments.  If the Original Dome failed because of a defect, then this fact could make a claim of defect concerning the Replacement Dome more probable.  This would have been sufficient grounds to deny coverage under the Policy.  The Court finds evidence of the Original Dome and its collapse relevant to the claims at issue.

### ii.     *Unfair prejudice, confusion of jury, and waste of time*

Unlike the lower standard for relevancy, Rule 403 imposes a higher standard.  Nonetheless, here, the probative value of admitting evidence of the Original Dome is substantially outweighed by the risk of confusing the jury, unfair prejudice, and waste of time.  *See* Fed. R. Evid. 403.

6

Plaintiffs contend that Defendants have no foundation for introducing evidence of the Original Dome's collapse and that its admission would solely imply, with bias, that because the Original Dome may have been deficient, the Replacement Dome was also deficient. (Pls.' Moving Br. at 15–16.) Plaintiffs add that in addition to the relevancy and prejudice issues, evidence of the Original Dome and insurance claim involved "[a] different insurance policy with terms separate and distinct from the policy at issue," which Plaintiffs claim "will only compound jurors' confusion." (*Id.* at 16.) Plaintiffs further argue that the question of deficiency is not presently before the Court and adjudicating this question would lead to a "mini-trial of a non-issue." (*Id.*)

In contrast, Defendants argue that the failure of the Original Dome under similar weather conditions is highly probative evidence of a possible design defect of the Replacement Dome. (Defs.' Opp'n at 3.) Defendants contend that such evidence is not prejudicial because it does not have a tendency to suggest a decision on an improper basis. (*Id.*) However, Defendants concede that evidence of the prior insurance claim should be excluded. Although it is relevant, it is highly prejudicial and would create a strong likelihood that the jury would infer that this loss should be covered because the prior loss was covered and both policies differ. (*Id.*)

The Court agrees with Plaintiffs that evidence of the Original Dome is prejudicial, will confuse the jury, and waste the Court's time. After weighing its probative value against the possible dangers enumerated under Federal Rule of Evidence 403, the Court finds that the probative value of the Original Dome's collapse is minimal. First, admission of such evidence would presuppose that the Replacement Dome collapsed because of a deficiency. Admission of this evidence would only serve one purpose: to show propensity—since the Original Dome may have collapsed due to a defect, the Replacement Dome too collapsed for the same reason, which the Court finds highly prejudicial.

Second, evidence of the Original Dome will confuse and mislead the jurors to the extent both domes collapsed under purportedly similar weather conditions and in the same way, as Defendants concede. (Defs.' Opp'n at 2.) Further, as Plaintiffs argue, both policies are different and contain distinct and separate terms and coverage  (*See* Final Pretrial Order at 3), given that both domes were designed by the same expert, the Court finds that discussion of both domes as well as both policies would have a high likelihood of confusing the jury.

Third, and finally, the introduction of evidence of the Original Dome would be a waste of the Court's time.  At issue, in this case, is the cause of the *Replacement Dome's* collapse.  If the Court were to allow evidence of the Original Dome to adjudicate the cause of the Replacement Dome's collapse, then the Court would first have to adjudicate the cause of the Original Dome's collapse.  In essence, issues relating to the Original Dome would overlap and the Court would need to adjudicate issues pertaining to the Original Dome before moving to issues relating to the Replacement Dome.  This would lead to a trial within a trial and would cause undue delay and mislead and confuse the jury as to the ultimate factual issue, namely the cause of the Replacement Dome's collapse on March 14, 2017.

It does not go unnoticed that a major flaw in Defendants' argument is that Defendants seek to exclude evidence of the prior insurance claim but not evidence of the Original Dome's collapse. (*See* Defs.' Opp'n at 4; Defs.' Moving Br. at 5–9.)  Throughout Defendants' submissions, they concede that evidence of the prior insurance claim "has absolutely no bearing on any of the issues in this case." (Defs.' Moving Br. at 6.)  Defendants attempt to thread the needle by drawing a distinction that evidence of the Original Dome's collapse is admissible even though the insurance policy for the Original Dome is not.  The Court finds, however, that evidence of the Original Dome's collapse, and the prior insurance claim, should be treated as one and the same when it

comes to analyzing their admissibility in the instant litigation.  The Court will grant Plaintiffs' motion seeking to exclude evidence of both the Original Dome's collapse and insurance claim.  In the same vein, the Court will grant in part and deny in part Defendants' motion.  Therefore, for the reasons stated above, evidence of the Original Dome and insurance claim will be wholly excluded.

    2.   *Motion to establish Defendants' legal burden to prove application of exclusions*

The Court finds that Defendants have the legal burden of proving the application of exclusions under an insurance policy.  *Benamax Ice, LLC v. Merch. Mut. Ins. Co.*, 529 F. Supp. 3d 350, 355 (D.N.J. 2021).

Here, Plaintiffs argue that Defendants are barred from introducing evidence or arguing that Plaintiffs have the burden to prove the collapse of the Replacement Dome was not caused by an excluded peril.  (Pls.' Moving Br. at 17.)  Under New Jersey law, Plaintiffs explain that they bear the initial burden of proving that the loss is within the Policy.  (*Id.*)  However, with regards to exclusionary provisions, Plaintiffs argue that Defendants, the insurer, have the burden of proving that an exclusion to coverage is applicable.  (*Id.* at 17–18.)

In opposition, Defendants argue that this burden shifting deviates from well-settled New Jersey law.  (Defs.' Opp'n at 5.)  According to Defendants, Plaintiffs conceded that if Defendants can establish an exclusion to coverage applies, then Plaintiffs bear the burden of proving the loss falls within the scope of any exception to the exclusion.  (*Id.*)  Defendants argue that Plaintiffs have the burden of proving causation and that Plaintiffs have already conceded that it is their burden to prove the applicability of the exception to the Policy's collapse exclusion.  (*Id.* at 6–7.)  Defendants argue that in addition to showing an exclusive cause of the collapse, Plaintiffs must also show that no other potential causes contributed to the collapse.  (*Id.* at 7.)

In their reply, Plaintiffs contend, however, that Defendants' argument about Plaintiffs' burden is contradictory; although Defendants acknowledge that Plaintiffs are not required to disapprove the existence of an error or omission, Defendants also acknowledge that Plaintiffs must prove an error or omission did not contribute to the collapse. (Pls.' Reply at 6–7.) Plaintiffs also add that Defendants' supporting authority is distinguishable because, in one of those cases, the plaintiff's expert opined on the cause of the collapse. (*Id.* at 7.)

The Court agrees with Plaintiffs. It is well settled within this District and under New Jersey state insurance law that the insurer—in this case, Defendants—bear the burden of proving whether an exclusion applies. *See e.g.*, *Benamax Ice, LLC.*, 529 F. Supp. 3d at 355 ("New Jersey courts have held that insurance policy exclusions must be narrowly construed and that the burden is on the insurer to bring the case within the exclusion."); *Cadre v. Proassurance Cas. Co.*, Civ. No. 16–0103, 2016 WL 3844208, at *4 (D.N.J. July 14, 2016) ("It is axiomatic that the party seeking coverage bears the burden of bringing its claim within the basic terms of the insurance policy. However, it is the insurer that carries the burden of proving that the loss comes within a policy exclusion." (citations omitted)); *Liberty Ins. Corp. v. Tinplate Purchasing Corp.*, 743 F. Supp. 2d 406, 411 (D.N.J. 2010) ("Insurance policy exclusions 'must be narrowly construed; the burden is on the insurer to bring the case within the exclusion.'" (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997))); *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007) ("Moreover, the insurer bears the burden of proving that a provision limiting coverage (either an exclusion or limitation) applies to the particular loss at issue." (citing *Princeton Ins.*, 151 N.J. at 95)); *Hatco Corp. v. W.R. Grace & Co.--Conn.*, 801 F. Supp. 1334, 1361 (D.N.J. 1992) (explaining that the "burden of proving that coverage is excluded is on the insurer" and "when an insurance policy includes an unambiguous owned-property exclusion, this burden is met

when the insurer makes a prima facie showing that the remedial measures in question were performed on the insured's property"); *Villa v. Short*, 195 N.J. 15, 23–24 (2008) (explaining that the burden is on the insurer to prove the case falls within the exclusion); *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 329 (1998) (stating that "[the insurer] does not dispute the general rule that an insurer bears the burden of proving that a policy exclusion precludes coverage").

Given the breadth of authority establishing that the insurer bears the burden of proving an exclusion applies, the Court is persuaded and agrees with Plaintiffs. Therefore, the Court will grant Plaintiffs' motion.

        i.     *Defendants must be precluded from arguing the application of any aspect of the "Defects, Errors, and Omissions" Exclusion that is not supported by an expert opinion*

The issue, however, of whether an expert opinion is needed to prove the applicability of the exclusion within the Policy, the Court finds Defendants' position more persuasive. An expert will not be required for Defendants to prove that the exclusion applies.

Plaintiffs argue, here, that the exclusionary language is nuanced and requires an expert. (Pls.' Moving Br. at 18.) They contend that Defendants must be precluded from arguing that the "defects, errors, and omissions" exclusion applies unless it is supported by an expert's opinion. (*Id.*) Plaintiffs argue that Defendants must provide an expert's opinion because an ordinary person would not be familiar with the "Dome's architecture and engineering nuances" to know if it was properly designed. (*Id.* at 18–19.) Plaintiffs contend that "no expert testimony or expert opinion has been offered to show that the Replacement Dome's Collapse was caused by any of the other types of errors or omissions enumerated in the 'Defects, Errors, and Omissions' exclusion." (*Id.* at 19.) Plaintiffs argue that allowing the admission of the exclusion without an expert would mean the jury would be required to speculate as to the cause of the error, which violates New Jersey law. (*Id.*) Additionally, Plaintiffs argue that any attempt to introduce previously undisclosed expert

testimony or evidence that form a basis for denial of coverage would be inadmissible under Rule 403 at this stage in the litigation.  (*Id.* at 21.)  Under Rule 403, Plaintiffs contend that such a late disclosure would be prejudicial because they would not have had an opportunity to properly conduct discovery.  (*Id.*)

In opposition, Defendants first raise a procedural issue with Plaintiffs' Motion.  (Defs.' Opp'n at 8.)  Defendants contend that Plaintiffs' request to preclude Defendants from arguing that aspects of the defects, errors, and omissions apply without expert support "is a separate and distinct motion, which was not approved by the Court" during the Final Pretrial Conference.  (*Id.*)  Defendants next argue that Plaintiffs' request should be denied because the application of their Policy's defects, errors, and omissions exclusion are properly supported by competent evidence.  (*Id.*)  Defendants claim that Plaintiffs willfully ignore the clear language of Cunningham's report, one of Defendants' expert witnesses.  (*Id.*)  The report specified that the amount of snow on the date of the loss did not exceed snow load specifications for the Replacement Dome as provided by the manufacturer.  (*Id.* at 8-9.)  Additionally, Defendants argue that expert testimony is not necessary to support their position that "[an] act, error or omission related to the maintenance of the [Replacement] Dome" also contributed to the collapse because the product manual sufficiently addresses who is responsible for snow removal.  (*Id.* at 9-10.)

In reply, Plaintiffs argue that their motion was approved by the Court because the first subpart of that motion was to address the manner Defendants were required to satisfy their burden of proof on the exclusion clause.  (Pls.' Reply at 5–6.)  Plaintiffs argue that while Defendants' expert mentioned the Replacement Dome's specifications in his reports, the report will not be sufficient to meet Defendants' burden of proving coverage is excluded because he did not opine as to whether a defect in the Replacement Dome's specifications caused the collapse.  (*Id.* at 8–9.)

After reviewing the parties' submissions, the Court finds that no expert is needed to prove the exclusion to the Policy applies. Further, even if an expert was needed, Defendants' expert sufficiently opined as to whether an act, defect, or omission in the Policy contributed to the collapse.

The Court will first address Defendants' procedural argument regarding the inappropriateness of Plaintiffs' motion. Contrary to Defendants' argument, Plaintiffs' motion was approved by the Court. Defendants are correct in stating that the Final Pretrial Order never expressly authorized Plaintiffs to argue that expert support was needed to prove that the exclusion applies. In discussing the Pending/Contemplated motions, the Final Pretrial Order states that Plaintiffs should file a "[m]otion to establish Defendants' legal burden to prove the application of exclusions." (Final Pretrial Order at 2.) However, Plaintiffs' argument regarding an expert is related to the burden of proof; namely how to meet that burden. The Court finds that Plaintiffs' motion was covered by this provision of the Final Pretrial Order.

In deciding whether to admit expert testimony, the trial court serves as a "gatekeeper" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (applying *Daubert* standard to all expert testimony). The court considers whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, *i.e.*, it must "fit" the facts of the case. *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). The proponent of the expert testimony must prove these three requirements by a preponderance of the evidence. *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citing *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)).

Plaintiffs' argument fails for two reasons.  First, Plaintiffs contradict themselves because they argue that an expert "did not opine that any defect in the [Replacement] Dome's specifications caused it to Collapse," but they concede in the preceding sentence that Defendants' expert, Eric Cunningham of Madsen, Kneppers, & Associates, Inc., "mentioned the [Replacement] Dome's specifications in his reports" and that, during his deposition, Cunningham "testified that only [the] 'deficiency in the design' and the 'winter weather event' [were] the causes of the Collapse." (Pls.' Reply at 8-9.)   In essence, Plaintiffs seemingly concede that Defendants' expert did opine as to why the exclusion may not apply.  Plaintiffs' argument is, therefore, better framed as a matter of sufficiency of the expert's testimony rather than the presence of one.  Either way, Plaintiffs' argument fails because Defendants' expert did sufficiently opine in his report and deposition testimony even though expert testimony is not a requirement to prove that an exclusion applies.

Second, Defendants' expert, Cunningham opined throughout his report that an act, error, or omission related to the maintenance of the Replacement Dome contributed to the collapse.  The following excerpt from the report is illustrative:

> Based upon this information, we believe that the inflatable structure membrane tore just prior to the collapse.  The design of the structure did not allow the steel cables to prevent the propagation of a tear resulting in a large opening near the center of the structure, a critical loss of pressure, and subsequently the rapid collapse of the structure re.  Tearing of the fabric at the seams may also have contributed to the collapse of the structure.  The verbal report of the collapse provided by the Insured is consistent with this assessment.

(*See* Malamud Decl., Ex. 5, Cunningham Report at 6, ECF No. 63-5.)  This report speaks directly to the cause of the collapse and why the "Defects, Errors, and Omissions" exclusion may not apply. Therefore, even if an expert were required, Defendants have fulfilled this requirement.  That being said, the Court will not require expert opinion here.  Plaintiffs' motion will be denied.

> ii. *Defendants must be precluded from arguing that Plaintiffs must establish*
> *the inapplicability of the Defects, Errors, and Omissions Exclusion in order*
> *to Establish Coverage*

The Court finds that the "Defects, Errors, and Omissions" is an exclusion, and as stated, the insurers have the exclusive burden of proving whether an exclusion applies. Therefore, Plaintiffs will not be required to prove the inapplicability of this exclusion.

In anticipation of a possible argument by Defendants, Plaintiffs contend Defendants must be precluded from arguing that Plaintiffs have the burden to show the inapplicability of the defects, errors, and omissions exclusion. (Pls.' Moving Br. 21.) Here, Plaintiffs concede that it is their burden to show that the collapse of the Replacement Dome "was caused only by the weight of snow and ice" and that they will satisfy this burden "via the testimony of their expert." (*Id.* at 22.) However, Plaintiffs argue that Defendants seek to prove that the Replacement Dome's collapse was not only caused by the weight of snow and ice but also that the collapse is attributable to an "excluded peril" within the Policy's exclusionary provision. (*Id.* at 23.) Plaintiffs contend that if Defendants were permitted to make this argument, it would add to their burden to both proving the cause of the collapse and disproving the application of the "Defect, Errors, and Omissions" exclusion—a position that is contrary to principles under New Jersey Insurance Law. (*Id.*) They contend that under Federal Rule of Evidence 403, Defendants' position would confuse the topic of fundamental burdens under New Jersey insurance law. (*Id.*)

Defendants contend that Plaintiffs' position is inaccurate. (Defs.' Opp'n at 7.) Here, Defendants argue that Plaintiffs are not obligated to "disprove the existence of an error or omission in the [Replacement] Dome's design, specifications or construction." (*Id.*) Instead, Defendants argue Plaintiffs' burden is to both prove "that the only cause of the failure was the weight of ice and snow" and "that other potential causes did not contribute to the collapse." (*Id.*)

In their reply, Plaintiffs explain that Defendants' argument is contradictory.  (Pls.' Reply at 6.)  In the same sentence, Defendants "acknowledge that Plaintiffs 'are not obligated to disprove the existence of an error or omission in the Dome's design, specifications, or construction,'" yet Defendants also "state that Plaintiffs 'must prove that any error or omission did not contribute to the failure.'"  (*Id.*)  Additionally, Plaintiffs contend that the *Wurst* and *Romano*[3] cases, both relied upon by Defendants, are distinguishable.  Plaintiffs note those cases involved policyholders with experts who opined as to the cause of the collapse which is to the contrary in this case.  (*Id.* at 7.)

At issue is whether Plaintiffs must, in addition to proving the weight of snow and ice caused the collapse, also prove that other causes did not contribute to the collapse.  In other words, whether enumerated errors or omissions in design, specifications, or construction was also the cause of the collapse.  The Court finds that Plaintiffs will not be required to additionally prove other causes did not contribute to the collapse for two reasons.  First, Plaintiffs are correct in that Defendants conceded in their opposition that Plaintiffs would not be required to "disprove the existence of an error or omission in the [Replacement] Dome's design, specifications or construction."  (Defs. Opp'n at 7.)  However, as argued by Plaintiffs, Defendants also stated "in the very same sentence" that "Plaintiffs 'must prove that any error or omission did not contribute to the failure.'"  (Pls.' Reply at 6.)  This contradictory statement is a flaw in Defendants' argument which bolsters Plaintiffs' position.  Second, and more importantly, the Court reviewed the Policy.  And under that Policy, the "Defects, Errors, and Omissions" section falls squarely under "Perils Excluded" (*i.e.*, an exclusion to the Policy).  (*See* Barrese Decl., Ex. A, Insurance Policy at 11–12, ECF No. 61-3.)

Second, given that the Court has already opined that insurers, in this case Defendants, have the burden to prove an exclusion to the Policy applies, the Court likewise concludes that Plaintiffs

---

[3] *Wurst v. State Farm Fire & Cas. Co.*, 431 F. Supp. 2d 501 (D.N.J. 2006); *Romano v. Metro. Prop. & Cas. Ins. Co.*, Civ. No. A-3525-11T1, 2014 WL 3537896 (N.J. Super. Ct. App. Div. July 18, 2014).

will not be required to prove other potential causes did not contribute to the collapse, namely those in the "Defects, Errors, and Omissions" provision. Therefore, Plaintiffs will not be required to prove inapplicability of the defects, errors, and omissions exclusion, and the Court will grant Plaintiffs' motion here. In sum, the Court will grant in part and deny in part Plaintiffs' motion.

   3.   *Motion to preclude Defendants from asserting any basis for denying coverage not raised in the Denial Letter*

   The Court will not preclude Defendants from utilizing a defective maintenance theory as a basis for denying coverage because Defendants expressly reserved their right to rely on new information and theories as they become available in their Denial Letter. Further, the Court found several instances in the attached exhibits, namely the deposition testimonies, that should have put Plaintiffs on notice that Defendants may rely on this theory as a basis for denying coverage. Accordingly, Defendants did not waive and are not estopped from relying on a defective theory of maintenance as a basis for denial, and Plaintiffs' motion to preclude Defendants will be denied.

   Plaintiffs contend that any evidence, testimony, or argument from Defendants that were not previously stated in their Denial Letter, which was the foundation for Defendants' denial of coverage, should be precluded. (Pls.' Moving Br. at 23.) Specifically, they contend that arguments about defective maintenance must be precluded because they would be prejudicial under the Federal Rules of Evidence. (*Id.* at 24.) Plaintiffs contend Defendants failed to raise the defective maintenance claim in their Denial Letter even after having an opportunity to do so. (*Id.*) Plaintiffs add that Defendants raised the defective maintenance theory for the first time in the Proposed Final Pretrial Order, and Plaintiffs were without adequate notice. (*Id.*) Moreover, if the Court were to allow Defendants to raise this basis for denial, Plaintiffs contend they would be denied the opportunity to refute the theory and to conduct any related discovery, which would be prejudicial at trial. (*Id.*)

Plaintiffs also argue that under Federal Rule of Civil Procedure 26, Defendants were required to disclose and amend (if needed) any information or documentation in their possession to support their defense. (*Id.* at 25.) They add that if Defendants intended to raise the defective maintenance theory, then they should have disclosed it under Rule 26(a). (*Id.*) Given that Defendants did not disclose this theory, Plaintiffs argue that under Federal Rule of Civil Procedure 37(c)(1), the Court has the authority to impose sanctions for failure to provide information required under Rule 26(e). (*Id.* at 25–26.) Plaintiffs argue Defendants' nondisclosure resulted in prejudice that is uncurable because discovery closed on November 1, 2019, the introduction of such evidence or testimony would be disruptive, and Plaintiffs would have been denied the opportunity of discovery on this issue. (*Id.* at 26.)

In opposition Defendants reject Plaintiffs' argument, urging the Court to deny Plaintiffs' motion because Defendants claim they raised the defective maintenance defense in a timely manner and Plaintiffs will not be prejudiced by its admission. (Defs.' Opp'n at 11.) Defendants argue that Plaintiffs cannot claim a loss within coverage through waiver or estoppel, which Plaintiffs are attempting to do. (*Id.*) Defendants maintain that their Denial Letter expressly stated that it was based on all information presently available to them and that they expressly reserved the rights about the Policy's language and exclusions. (*Id.*) Additionally, Defendants argue that Plaintiffs cannot reasonably claim they were without notice because Defendants cited the Policy's defects, errors, and omissions exclusion, discussing maintenance, as part of its sixth affirmative defense in their Answer. (*Id.* at 12.) Defendants further contend that the cases Plaintiffs cite in support of their arguments are inapplicable because New Jersey Courts now bar excluded losses from being brought within coverage by waiver or estoppel. (*Id.* at 13.) Additionally, Defendants argue that Plaintiffs would not be prejudiced because no discovery is needed to explain how the

Replacement Dome was maintained.  (*Id.*)  Defendants contend that the issue of maintenance was specifically explored during depositions.  (*Id.* at 13–14.)

Plaintiffs, in reply, distinguish *Greenberg & Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 312 N.J. Super. 251 (App. Div. 1998), a state court case relied upon by Defendants.  (Pls.' Reply at 9.)  Plaintiffs contend *Greenberg* is flawed because it was expressly rejected in *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, which held that "[t]his Court will continue to rely on the principle that an insurer can waive its right to use an exclusion when it fails to raise it timely."  (*Id.* at 9)  Additionally, Plaintiffs argue that Defendants' general reference to the errors and omissions exclusion in the Denial Letter and affirmative defenses is insufficient and should have been more precisely stated.  (*Id.* at 10.)  Plaintiffs contend that if Defendants intended to rely on a defective maintenance theory as a basis for denying coverage, they would need an expert to support this theory.  (*Id.* at 10-11.)  Given that Defendants' expert, Cunningham, has not opined or testified on that theory, Plaintiffs argue that Defendants should be precluded from asserting this theory.  (*Id.* at 11.)

Plaintiffs' argument is without merit.  First, Defendants expressly reserved their right to rely on new information as a basis for denying coverage in their Denial Letter.  For example, the Denial Letter, in discussing the grounds for denial of coverage, expressly states: "Underwriters reserves the right to rely on additional provisions should new information become available." (*See* Barrese Decl., Ex. D, Coverage Denial Letter at 1, ECF No. 61-6.)  Another example is found several paragraphs later in that same letter stating:

> Underwriters' coverage denial is based on all information presently available to Underwriters. If you have other information or documentation that was not previously provided and which you believe may impact our coverage determination, please forward it to my attention as soon as possible. *Please be advised, however, that this invitation to submit additional information and documentation*

> *is made without waiving or limiting Underwriters' coverage positions as stated in this letter. Accordingly, neither this letter, nor any act, past or future, by any representative of Underwriters should be construed as a waiver of any of the Policy's language, limitations, or exclusions. Underwriters expressly reserves all rights and defenses under the Policy and under the law.*

(*Id.* at 3) (emphasis added).  The express language in the Denial Letter alone provides a sufficient basis to deny Plaintiffs' motion.

Second, deposition testimony of several witnesses also provide examples that Plaintiffs should have been on notice of Defendants' potential use of a defective maintenance theory as grounds for denial of coverage.  During the deposition of Tyler Olivero, the Director of Maintenance, was asked whether he "received any training on maintenance  or upkeep of the [Replacement] [D]ome," to which he responded, "No."  (Malamud Decl., Ex. 13, Olivero Dep. 18:5–7, ECF No. 63-13.)  Also illustrative is the testimony of Pedro Mena as he was asked about maintenance issues throughout his deposition.  Specifically, Mena was asked whether "Diamond Nation ke[pt] any record of its maintenance activities with respect to the ball," to which he responded, "I do not know."  (Malamud Decl., Ex. 14, Mena Dep. 12:5–7, ECF No. 63-14.)  Mena was also asked: "Have you received any sort of training on the maintenance or upkeep of the [Replacement] [D]ome?"; and "Aside from yourself, how many other maintenance employees does Diamond Nation have?" (Mena Dep. 12:11–15.)  These questions should have indicated to Plaintiffs that Defendants may raise a defective maintenance theory as a basis for denying coverage.  Additionally, Defendants, in their Sixth Affirmative Defense of their Answer, expressly stated Plaintiffs' claims were barred under the "Defect, Errors, and Omissions" section of the Policy.  (Defs.' Answer. to Compl. at 9, ECF No. 9.)  Specifically, that section of the Answer cited the precise language from the Policy upon which coverage was denied.  The following excerpt is demonstrative:

> We do not pay for loss which results from one or more of the
> following: 1) an act, error, or omission (negligent or not) relating to:
> a) land use; b) *the design, specification, construction, workmanship,
> installation, or maintenance of property*; c) planning, zoning,
> development, siting, surveying, grading, or compaction; or d)
> *maintenance of property (including land, structures, or
> improvements); whether on or off the covered locations.*

(*Id.*) (emphasis added.)

Third, Plaintiffs' argument that Defendants waived or are estopped from utilizing defective maintenance as a basis for denying coverage is inaccurate.  As the Court stated above, Defendants vis-à-vis the Denial Letter, Answer, and deposition testimonies did indicate that defective maintenance may be a basis for denial.  Here, Plaintiffs were informed as early as the Denial Letter and throughout the discovery process of Defendants' intent to use this theory.  *See Elizabethtown Water*, 15 F. Supp. 2d at 565 ("[T]he insurer did not waive its right to raise exclusions that were not listed in the reservation of rights letter.  The reasoning behind that finding was that a delay in raising an exclusion should not be deemed a waiver.  When an insured and insurer contest whether a policy governs a given loss, the insurer may rely on an exclusion so long as it informs the insured in an early stage of the litigation." (citing *Hatco.*, 801 F. Supp. at 1363)).

Last, even if the Court agreed with Defendants—that Defendants only specifically referenced defective maintenance as a basis for denying coverage in the Final Pretrial Order[4]— Plaintiffs will not be prejudiced because the Court finds that the Denial Letter, Answer, and deposition testimony should have put Plaintiffs on notice that Defendants would likely raise this defense.  Accordingly, Plaintiffs' motion will be denied.

---

[4] *See* Final Pretrial Order at 5 ("The Policy also excludes coverage for losses caused by acts, errors or omissions relating to the maintenance of property.  Although the owner's manual for the [Replacement] Dome explicitly states that snow accumulation must be removed from the [Replacement] Dome, no removal took place during the relevant storm.  Moreover, Plaintiffs do not have any employees trained to remove snow from the [Replacement] [D]ome.  To the extent Plaintiffs allowed snow to accumulate on the [Replacement] Dome in contravention of the manufacturer's instructions, the loss is excluded.").

### 4.   *Motion to limit use of weather data relied on by Eric Cunningham*

The Court will also deny Plaintiffs' motion to limit the use of weather data relied on by expert Cunningham because it is admissible under several exceptions to the hearsay rule and Plaintiffs would not be prejudiced if it were admitted under Federal Rule of Evidence 403.

To begin, Plaintiffs sought to limit Defendants' use of the weather reports on two grounds. First, the reports were inadmissible hearsay under Rule 801; and second, their probative value is substantially outweighed by its prejudicial value, making it inadmissible under Rule 403.  (Pls.' Moving Br. at 27.)  On hearsay grounds, Plaintiffs contend that Cunningham's weather reports were not prepared by him, nor does he have any personal knowledge about how the reports were prepared, or how they should be interpreted.  (*Id.*)  Plaintiffs further argue that the reports are inadmissible hearsay because they are statements made by an out-of-court declarant offered to assert the truth of the matter.  (*Id.*)  Plaintiffs rely on *Crowley v. Chait*, 322 F. Supp. 2d 530, 533 (D.N.J. 2004), for the assertion that even though an expert can rely on inadmissible evidence to form their opinion, they cannot use it to bring into evidence otherwise inadmissible hearsay testimony.  (*Id.*)

Additionally, Plaintiffs argue that under Rules 402 and 403, the weather reports are inadmissible because they were not recorded from weather stations in Flemington, New Jersey, where the Replacement Dome is located.  (*Id.* at 28.)  They add that the weather reports reflect the conditions in Lebanon, New Jersey, and Somerville-Somerset Airport, New Jersey, which are respectively 4.8 and 11.6 miles from the Replacement Dome's location.  (*Id.*)  Therefore, Plaintiffs argue that the reports are not relevant because they do not show the weather or snow totals inflicted on the Replacement Dome itself, and its use should be precluded to show the weather conditions at the Replacement Dome on the day it collapsed.  (*Id.*)

Contrary to Plaintiffs' argument, Defendants argue the reports are admissible as it is neither hearsay nor will it prejudice Plaintiffs.  (Defs.' Opp'n at 14.)  Defendants contend that the weather reports are admissible because the National Oceanic & Atmospheric Administration reports on weather fall within a hearsay exception for records or statements of a public office.  (*Id.* at 15–16.) Defendants argue the report is not barred because, under Federal Rule of Evidence 807, (1) the statement is supported by sufficient guarantees of trustworthiness and  (2) the statement is more probative on the point it is offered for compared to any other evidence that the proponent may obtain through reasonable efforts.  (*Id.* at 15.)  Finally, Defendants argue that Plaintiffs have already "stipulated to the truth of the contents of the reports."  (*Id.* at 16.)

Defendants also reject Plaintiffs' attempt to preclude the report under Rules 402 and 403. (*Id.*)  Defendants argue that Plaintiffs have not offered any evidence to suggest the weather reports do not accurately represent the weather conditions on the date of the reported collapse.  (*Id.*)  Next, Defendants reject Plaintiffs' argument that the location the weather was reported cannot be used because it is distanced from where the Replacement Dome collapsed.  (*Id.* at 17.)  Defendants argue that if Plaintiffs' argument was accepted, "the only time weather reports would be admissible is if they were contemporaneously recorded at the precise location," which Defendants argue "defies logic" and contravenes the rules of evidence.  (*Id.*)  Defendants further argue that the reports are not prejudicial or misleading; they contend the reports are at least circumstantial evidence of the weather conditions at the Replacement Dome on the date of the collapse and any perceived prejudice can be addressed during cross-examination.  (*Id.* at 17.)

In reply, Plaintiffs first repeat arguments offered in its moving brief regarding the inaccuracy of Defendants' data given the location of the weather station.  (Pls.' Reply at 11.) Plaintiffs argue Defendants missed the opportunity to obtain firsthand evidence of the amount of

snow at the Replacement Dome on the day of the Collapse and are now seeking to introduce expert weather report that is hearsay. (*Id.* at 12.) Plaintiffs also add that contrary to Defendants' assertion, case law supports that a court does not always take judicial notice of historical weather data. (*Id.* at 13.) In the alternative, Plaintiffs argue that even if the weather reports are admissible under a hearsay exception, it is nonetheless prejudicial and not readily resolved by cross-examination. (*Id.* at 14.)

        i.     *The weather reports relied on by Defendants' expert is not precluded by the hearsay rule*

Federal Rule of Evidence 801(c) provides that hearsay "means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Federal Rule of Evidence 802 in turn prohibits the admission of hearsay unless an exception applies. Fed. R. Evid. 802. Assuming that Plaintiffs intend to offer the weather reports as evidence of the truth of the matter asserted in them (*i.e.*, the weather conditions on the date the Replacement Dome collapsed), the reports would be hearsay. However, the Court finds that hearsay exceptions apply.

Federal Rule of Evidence 803(8) allows the admission of public records and reports that would otherwise be hearsay. The rule expressly allows "a record or statement of a public office if: the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). Further, Federal Rule of Evidence 803(17) is another exception that allows for the admission of the weather report. That exception allows "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations" to be admissible. Fed. R. Evid. 803(17). *See also Conoco Inc. v, Dep't of Energy*, 99 F.3d 387, 393 (Fed. Cir. 1996) (listing weather reports among other documents that fall within Rule 803(17) and that are "prepared with the view that they would

be in general use by . . . members of the public having a general need to rely on information of that type"). Therefore, evidence of the weather reports will not be precluded under the hearsay rules.

        *ii.*    *<u>The weather reports relied on by Defendants' expert is not precluded because its probative value is substantially outweighed by its risk for unfair prejudice and will not mislead the jury</u>*

The weather report is not prejudicial for two reasons. First, there is no requirement that a weather report must be recorded from a weather station in the precise city which is being reported on. This has simply never been the standard for admission of such reports. A court will not exclude the weather report if its probative value is not substantially outweighed by a danger of, among other things, unfair prejudice, and the potential to mislead the jury. Fed. R. Evid. 403. Here, the weather report appears to show the conditions during the date of the collapse. The weather report shows the minimum and maximum temperatures, the snowfall, and the snow depth. (*See* Malamud Decl., Ex. 5, Weather Report, ECF No. 63-5.)

Second, Plaintiffs have asserted, without any support, how the use of the weather report will mislead the jury. In fact, Plaintiffs have also not specifically proven how the use of the weather report will be prejudicial. From what the Court understands, their assertion implies that because the weather report was not directly recorded from Flemington, New Jersey, it is therefore prejudicial. However, this statement does not necessarily mean the report is inaccurate and Plaintiffs have not argued that. Therefore, the Court will deny Plaintiffs' motion, and the weather report will be admissible to prove the conditions on the day of the collapse. To the extent Plaintiffs believe that little consideration should be given to this evidence, or that there are concerns with the accuracy of the information, as with all evidence, such issues go to weight and not admissibility.

5.   *Motion to Establish Authenticity of Documents*

Decision on this motion is deferred.[5]

## B.  **Defendants' Motion in Limine**

1.   *Motion to exclude evidence of Plaintiffs' alleged business interruption and extra expense damages because it is not properly supported by expert testimony*

The Court agrees with Defendants that Plaintiffs need to provide an expert to prove business interruption losses and extra expense damages if such damage calculations are based on projections that cannot be proven without an expert.  However, lost income or business interruption damages can be proved through lay witnesses.   The Court will, therefore, limit Plaintiffs' introduction of evidence of their business interruption losses without an expert to the extent that the damage calculations do not require a projection.

Defendants argue that recovery of Plaintiffs alleged lost income under the Policy requires projections, which they contend cannot be proven without an expert's opinion.  (Defs.' Moving Br. At 9.)  Defendants add that Plaintiffs' own "Damages Analysis" supports the need for an expert.  (*Id.* at 10.)  Defendants contend that Plaintiffs' damage analysis, which includes reports and spreadsheets, references only revenue and not net income, and an expert is needed to explain the relationship between the two concepts, thereby placing Plaintiffs' loss within the Policy.  (*Id.*)

Defendants also argue that expert testimony is also needed, here, because contrary to Plaintiffs' claim—that they lost a full season due to the Replacement Dome's collapse— Defendants contend that this did not occur and the Replacement Dome was only damaged for approximately seventeen days when the Replacement Dome would have been removed in the

---

[5] Both parties briefly addressed whether the documents were authentic. However, the United States Magistrate Judge, in the Final Pretrial Order, ECF No. 57, instructed counsel to meet and confer in good faith to resolve the disputes related to this issue. Therefore, the Court will wait for the parties to adequately meet and confer to resolve authenticity issues before potentially intervening at a later date to address any outstanding items.

normal course of business. (*Id.* at 10-11.) Defendants argue that Plaintiffs' representative even testified that a new dome could have been constructed within five months; meaning that the Replacement Dome could have been constructed before the season started. (*Id.* at 11.) Beyond the issues with Plaintiffs' damage analysis, Defendants also argue an expert is needed because the plain language of the Policy demonstrates that a valuation of a loss of business income claim, such as here, requires a projection of earnings, which in turn requires an expert's analysis. (*Id.*) Given that Plaintiffs have not presented an expert's report on this issue, Defendants argue that evidence of business interruption and damages should be excluded. (*Id.*)

In opposition, Plaintiffs begin by highlighting that the cases Defendants cite are distinguishable. (Pls.' Opp'n at 5–6.) Plaintiffs argue those cases were brought by an individual employee and did not involve insurance coverage disputes. (*Id.* at 6.) Plaintiffs identify another important point of distinction in both cases: the court held that expert testimony was not required, contrary to Defendants' position. (*Id.*) Plaintiffs distinguish the first case, *Maxfield v. Sinclair Int'l*, 766 F.2d 788 (3d Cir. 1985), in the following ways: (1) that case involved a *former employer* seeking damages for lost past earnings as well as future lost earnings, (2) the court there held that expert testimony "was *not* required under the applicable circumstances," and (3) in *Maxfield*, the court explained that an "expert testimony is not required in all circumstances where future earnings are at issue, and that patterns of past income or similar objective evidence are appropriate evidence when determining future income." (*Id.*)

Plaintiffs also distinguish the second case relied upon by Defendants, *Chamberlain v. Wyoming Cty*, Civ. No. 16-1408, 2019 WL 719610 (M.D. Pa. Feb. 19, 2019). (*Id.* at 7.) According to Plaintiffs, the court in that case did not preclude the plaintiff's testimony so long as she did not "speculate or testify to any wage loss issues that are of specialized or technical nature and that are

not within her personal knowledge." (*Id.*)  Last, Plaintiffs argue that to the extent Defendants believe Plaintiffs "calculated their damages incorrectly, Defendants will have an opportunity to address this issue at trial by cross-examining Plaintiffs' witnesses." (*Id.* at 8.)

In their reply, Defendants argue that Plaintiffs failed to cite any legal authority in support of their position. (Defs.' Reply at 6.)  Defendants further argue that Plaintiffs' evidence in support of its purported business losses, namely documentary and testimonial evidence, is insufficient to meet their burden under the Policy's plain language. (*Id.*)  Defendants add that Plaintiffs attempt to distinguish its cases proves unsuccessful. (*Id.*)  Specifically, Defendants argue that *Maxfield* and *Chamberlain* are indistinguishable from this case because while expert testimony was not required in those cases, it was solely because the valuation of losses in those cases was based on past earnings and not projections. (*Id.* at 6-7.)

Generally, an expert is not needed to establish loss of income damages.  *Maxfield*, 766 F.2d at 797. (explaining that lay testimony based on a plaintiff's former earnings history is appropriate for proving future earnings damages where "[t]here were no projections in earnings for which expert testimony was required").  However, Federal Rule of Evidence 701 requires that a lay witness have a "reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses." *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 82 (3d Cir. 2009) (quoting *Eichorn v. AT & T Corp.,* 484 F.3d 644, 649 (3d Cir. 2007)). *See Prescott v. R & L Transfer, Inc.*, Civ. No. 11-203, 2015 WL 3645270, *1–2 (W.D. Pa. June 10, 2015) (holding "Plaintiff will be permitted to present lay witness testimony to establish his lost earnings to the extent that the claim for damages and the testimony presented does not necessitate expert opinions or projections that would require expert testimony"); *Chamberlain v. Wyoming Cnty*, Civ. No. 16-1408, 2019 WL 719610, at *7 (M.D. Pa. Feb. 19, 2019) (holding that Plaintiffs'

testimony of future damages cannot go beyond "easily verifiable facts within [her] personal knowledge" and any facts that require "forward-looking speculation for which [she] lacks the necessary [expert] training" is excluded) (alterations in original) (citing *Donlin.*, 581 F.3d at 83)).

The Court has reviewed Plaintiffs' damages analysis and it is unclear whether those calculations are based on projections. Several exhibits illustrating Plaintiffs' business interruption losses seemed to be based on projected loss. A key example is a spreadsheet attached to Defendants' attorney's declaration illustrating Plaintiffs' business interruption losses, which depict the damages based on what losses Plaintiffs suffered while the Replacement Dome collapsed, in other words—projected losses. (*See* Malamud Decl., Ex.4, Spreadsheet of Business Interruption Losses, ECF No. 62-5.) However, other reports and documents included in Plaintiffs' damage analysis do not make it entirely clear whether all of Plaintiffs' damages are based on projections. An indicator is the absence of the word "projected" or "projection" within Plaintiffs' damage analysis.

The Court will grant Defendants' motion to require expert testimony. To the extent Plaintiffs' business interruption losses require a projection, then an expert will be required to prove these losses. However, if those loss calculations do not require a projection, then lay witnesses may suffice to show Plaintiffs' alleged business interruption losses.

The Court will also deny Defendants' motion to exclude evidence of business interruption and extra expense damage calculations. At this juncture, the Court will not exclude Plaintiffs' business interruption and extra expenses damage calculations solely because no expert has been provided. However, Plaintiffs are on notice that at trial, if the Court learns a projection is required, such evidence could be excluded if not coming from an expert. For now, the Court will grant in part and deny in part Defendants' motion.

2.  *Motion to establish the relevant period for the calculation of business interruption damages*

The Court finds that the determination of the restoration period, for purposes of determining business interruption damages, is a contested issue of fact better determined by the factfinder.  The Court will, therefore, deny Defendants' motion.

Defendants reiterated their previous argument that the only relevant period Plaintiffs may have lost income was for the seventeen days between March 24, 2017 (the date of loss), and April 1, 2017 (the date when the Replacement Dome would normally have been removed).  (Defs.' Moving Br. At 13.)  Defendants argue that the absence of the Replacement Dome after April 1 was irrelevant and did not cause any business interruption because the Replacement Dome would have been removed during that time.  (*Id.*)  Defendants add that the Replacement Dome could have been reconstructed within five months, which would have prevented any loss of income.  (*Id.* at 13–14.)  In the alternative, Defendants argue, that if evidence of business interruption is permitted without an expert, then it should be limited by the Court to the relevant dates they have proposed and any lost income calculation beyond those dates is irrelevant.  (*Id.* at 14.)

In opposition, Plaintiffs argue that a provision of the Policy relating to the "Restoration Period," provides that they are entitled to recover for loss of earnings and extra expenses for the period between March 17, 2017, seventy-two hours after the collapse, and March 14, 2018, twelve consecutive months after the collapse.  (Pls.' Opp'n at 9.)  In response to Defendants' claim that it was Plaintiffs' practice to remove the Replacement Dome by April 1, Plaintiffs argue that April 1 was only an approximate date, not the specific date of removal.  (*Id.* at 10.)

As for Defendants' argument that because the Original Dome was replaced in five months, the Replacement Dome could also have been replaced within the same time frame, Plaintiffs argue that this is flawed because Defendants assume the Court will rule against Plaintiffs' motion seeking

to exclude evidence of the Original Dome.  (*Id.*)  Even assuming arguendo that the Court permits

evidence of the Original Dome, "Defendants wrongly assume that the jury would agree that five

months represents the amount of time 'it should reasonably take'" to replace the Replacement

Dome and resume Plaintiffs' business.  (*Id.* at 10–11.)  Plaintiffs contend they were only able to

replace the Original Dome within the five-month time frame because the prior insurer promptly

paid Plaintiffs' insurance claim, which differs here.  (*Id.* at 11–12.)  Given the issues discussed

above, it is Plaintiffs' position that there are "clearly questions of fact as to the amount of time 'it

should reasonably take' for the [Replacement] Dome to have been replaced" and for Plaintiffs'

business to fully resume.  (*Id.* at 12.)  As a result, Plaintiffs add that the determination as to the

appropriate "Restoration Period" is a question of fact that should be left for a jury to decide.  (*Id.*)

In their reply, Defendants argue that Plaintiffs' characterization of what Defendants

determine is the "Restoration Period" is misleading.  (Defs.' Reply at 7.)  Defendants argue, and

the Policy states,  that the "Restoration Period" would "end[] on the date when the [Replacement]

Dome should have been repaired, rebuilt or replaced."  (*Id.*)  Defendants further contend that the

invoices Plaintiffs intend to rely on "obviate any factual questions with respect to how long it

should have taken to rebuild, repair, or replace the [Replacement] Dome."  (*Id.*)  Given Plaintiffs'

representative testimony that the Original Dome could have been replaced in approximately five

months, Defendants contend that Plaintiffs could have ordered, manufactured, and constructed a

new dome before the season.  (*Id.* at 8.)  Defendants also argue that the Policy's Earnings Coverage

is evidence that Plaintiffs would have removed the Replacement Dome in the normal course of

business on or around April 1, 2017.  (*Id.*)  Defendants argue that this point is bolstered by

Plaintiffs' representative's testimony that after the Replacement Dome was removed, Plaintiffs

were able to use the baseball field as normal.  (*Id.*)  In light of this testimony and other evidence,

Defendants argue the only applicable "Restoration Period" for purposes of a business interruption claim "was the date of loss through the date the [Replacement] Dome was removed, and use of the field resumed"—nothing beyond that. (*Id.* at 9.)

The Court finds that the factual disputes surrounding the restoration period make the factfinder better suited to resolve this issue. Defendants argue that the "Restoration Period" should be the seventeen days, between March 14, 2017 (the date of loss), and April 1, 2017 (the date the Replacement Dome would have been removed). (Defs.' Moving Br. At 13.) Counter, Plaintiffs argue that the restoration period should be between March 17, 2017, seventy-two hours after the collapse, and March 14, 2018, twelve consecutive months after the collapse. (Pls.' Opp'n at 9.) Given the clear contention between the parties on this issue, the Court will refrain from deciding this issue and leave it for the factfinder.

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). That is for the factfinder. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). *See also Williams v. Johnson* , 747 F. Supp. 2d 10, 20 (D.D.C. 2010) ("Like Plaintiff, the District misconstrues the purpose of a motion *in limine*, which should not be used to resolve factual disputes among the parties."). "Resolution of some of these disputes is premature because 'the context of trial' may provide clarity on the relevance and potential prejudice of each proffered piece of evidence." *MSKP Oak Grove, LLC v. Venuto*, Civ. No. 10–6465, 2017 WL 1807562, *3 (D.N.J. May 5, 2017); *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (noting that rulings on motions in limine "should not be made prematurely if the context of trial would provide clarity"); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often

useful to wait and see how the trial unfolds.").  The issue will, therefore, be left for resolution by the factfinder at trial.  The Court will deny Defendants' motion.

3.  *Motion to exclude evidence of Defendants' "Bad Faith"*

Plaintiffs' bad faith claims are no longer at issue as conceded by Plaintiffs.  (*See* Pls.' Opp'n at 13.)  As a result, the Court will grant Defendants' motion.

4.  *Motion to establish Plaintiffs' burden to establish the existence of a loss within the scope of the policy's insuring agreement and also to establish that the loss falls within the exception to an exclusion*

After reviewing the parties' submission, the Court will grant Defendants' motion and establish Plaintiffs' burden to prove that a loss falls within the scope of the Policy and within an exception to the exclusion of that same Policy.

Defendants argue that in a first-party insurance contract, as here, the plaintiffs (the policyholders), usually have the burden to show its loss is within the scope of the Policy.  (Defs.' Moving Br. At 15.)  In this case, Defendants contend Plaintiffs have the burden of proving coverage under the building property, earnings, and extra expenses agreements.  (*Id.*)  First, with regards to the building property agreement, Defendants argue Plaintiffs have the burden of proving that the Replacement Dome sustained direct physical loss caused by an external risk of direct physical loss.  (*Id.* at 16.)  Second, under the earnings coverage agreement, Defendants contend the coverage this agreement provides only applies during the "restoration period," which is when Plaintiffs' business is necessarily interrupted by loss to building property because of a covered peril.  (*Id.*)  Given this limited application, Defendants argue Plaintiffs have the burden of proving the following:

> (1) its business was interrupted due to a loss to building property caused by the external risk of direct physical loss, (2) that Plaintiff sustained an actual loss of net income, payroll expenses, interest, and other normally earned or incurred

operating expenses, and (3) such losses occurred during the restoration period."

(*Id.*)  Third, under the extra expense coverage, Defendants posit that Plaintiffs must prove that during the restoration period, they incurred extra expenses that were necessary to allow Plaintiffs to continue their business, a coverage expense covered under this section of the Agreement.  (*Id.* at 16–17.)

Defendants then argue that if Plaintiffs can overcome their initial burden, the burden shifts back to them.  (*Id.* at 17.)  Here, Defendants claim they will rely on two exclusions to prove coverage is precluded: (1) collapse and (2) defects, errors, and omissions.  (*Id.*)  Specifically, Defendants argue that with regards to the Policy's collapse exclusion, coverage is precluded for loss caused by the collapse.  (*Id.*)  Further with regards to the defects, errors, and omissions exclusion, Defendants contend coverage is precluded for "losses which result from an act, error, and omissions (negligent or not) relating to design, specification, or maintenance of property." (*Id.*)  They conclude by acknowledging their burden to provide evidence to support these exclusions.  (*Id.*)

Defendants also suggest that even after their burden is met, Plaintiffs have an additional burden of proving that an exception to an exclusion within the policy applies.  (*Id.*)  Defendants contend that Plaintiffs must prove an exception to the collapse, specifically relating to losses caused for specified perils. (*Id.*)  In other words, Defendants argue that Plaintiffs have the burden of proving the weight of the ice and snow was the exclusive cause of the collapse.  (*Id.* at 18.) Therefore, Defendants request that the Court enter an order directing the parties' respective burdens.  (*Id.*)

In opposition, Plaintiffs concede that they have the burden of establishing the existence of a loss that is within the scope of the Policy's Insuring Agreement.  (Pls.' Opp'n at 13.)  Plaintiffs

also concede that they have the "secondary burden of establishing that the loss falls within the exception to [the] Policy's Collapse Exclusion," which applies when the collapse is caused by one or more "specified perils." (*Id.*) Plaintiffs add that Defendants have emphasized Plaintiffs' burden is to prove the loss was caused solely by the weight of ice and snow and that Plaintiffs intend to prove this at trial. (*Id.*) Plaintiffs explain that they will rely on expert testimony to prove that "the Collapse was caused only by the weight of snow and ice, which is a 'specified peril.'" (*Id.*)

In anticipation of Defendants' motion possibly implying that Plaintiffs must also prove that the Collapse *was not* caused by any snow or ice, Plaintiffs argue the following: (1) that proving a "negative fact" would distort the burdens of proof, adding that Defendants have already conceded it is their burden to prove the applicability of the Policy's exclusions, and (2) any argument or evidence by Defendants that Plaintiffs have the burden to prove that the collapse was not caused by an excluded peril, mischaracterizes the burdens and misstates the law. (*Id.* at 14-15.)

Defendants, in reply, argue that Plaintiffs "are not obligated to disprove the existence of an error or omission in the [Replacement] Dome's design, specifications or construction." (Defs.' Reply at 9.) Instead, Plaintiffs must prove that the only cause of the Replacement Dome's collapse is attributable to the weight of ice and snow. (*Id.*) Defendants contend Plaintiffs also have the burden of disproving other potential causes did not contribute to the collapse. (*Id.*) Last, Defendants argue that this burden is consistent with both New Jersey state and federal law. (*Id.*)

The Court is perplexed that the parties—specifically Defendants—would continue to argue the burdens of proof even after Plaintiffs have conceded their burden. In the very first paragraph of its opposition, Plaintiffs expressly state that "it is the Plaintiffs' burden to establish the existence of a loss within the scope of the Policy's Insuring Agreement" and "Plaintiffs also acknowledge that they have the secondary burden of establishing that the loss falls within the exception to the

Policy's Collapse Exclusion." (Pls' Opp'n at 13.) This issue has been conceded. However, the Court, will therefore, take this opportunity to clarify the various burdens of proof and they are as follows: (1) Plaintiffs have the initial burden of proving the loss falls within the scope of the Policy, (2) after this is met, Defendants have the burden of proving that an exclusion to the Policy applies, thereby precluding coverage, and (3) the burden will then shift to Plaintiffs again to establish an exception to an exclusion applies. The Court will grant Defendants' motion.

### 5. Motion to establish Plaintiffs' Burden to Mitigate Their Damages

In line with established legal principles, the Court finds it is Plaintiffs' burden to mitigate their damages upon determining the insurer breached. Therefore, the Court will grant Defendants' motion.

Defendants contend that despite a clear duty under New Jersey law to mitigate damages, Plaintiffs have failed to do so. (Defs.' Moving Br. at 18.) Defendants argue that there was a warranty claim under the Policy Plaintiffs could have pursued, but instead Plaintiffs elected to allow their losses to accumulate. (*Id.*) Defendants also contend that Plaintiffs never attempted to get a loan or other funding to replace the Replacement Dome. (*Id.* at 19.) Defendants note that Plaintiffs' representative admitted that Plaintiffs also did not make any effort to restore the Replacement Dome after it failed. (*Id.*)

Plaintiffs argue that Defendants' position on mitigation is misguided. (Pls.' Opp'n at 15–16.) Plaintiffs argue Defendants' position fails to consider the appropriate mitigation standard and Defendants are to blame for failing to meet their obligations under the Policy. (*Id.* at 16.) Plaintiffs explain that it is in fact Defendants' burden to prove Plaintiffs' damages were capable of being mitigated and they have not done so. (*Id.* at 17–18.) Further, Plaintiffs contend that Defendants'

36

mitigation arguments are improper as it is based almost entirely on Defendants' own opinion as to the adequacy of Plaintiffs' mitigation efforts. (*Id.* at 18.)

As a result, Plaintiffs find these arguments flawed on several grounds. (*Id.* at 18.)  First, Plaintiffs contend that Defendants' argument makes several unfounded assumptions, including that Plaintiffs' damages were capable of mitigation and that pursuing a warranty claim or securing funding to replace the Replacement Dome were reasonable steps. (*Id.*)  Second, Plaintiffs add that several mitigative efforts were considered but were found to be impractical  (*Id.*)  For example, Plaintiffs admit they considered pursuing a warranty claim but found it impractical "after careful consideration" because "there was no indication that the [Replacement] Dome was in anything other than good working condition and fell only because of the weather." (*Id.*)  Plaintiffs also add that the issue of mitigation is better suited for a jury and that contrary to Defendants' position, they considered pursuing a loan and other means of financing, but their financial position made it implausible. (*Id.* at 18–19.)  Third, Plaintiffs further argue that Defendants' legal support for their position is easily distinguishable as it involved a breach of a public contract and not an insurance coverage dispute. (*Id.* at 19.)  Last, in requesting that Defendants' motion be denied, Plaintiffs argue that they will present evidence to show  their damages were mitigated "to the maximum extent possible" and were only unable to replace the Replacement Dome because of Defendants' failed to cover their losses. (*Id.*)

It is well established that Plaintiffs, the insured, have a duty to mitigate their damages.  A plaintiff must mitigate damages when "the defendant has already committed an actionable wrong, whether tort or breach of contract, then this doctrine limits the plaintiff's recovery by disallowing only those items of damages which could reasonably have been averted." *Granelli v. Chicago Title Ins. Co.*, Civ. No. 10–2582, 2012 WL 2072648, *8 (D.N.J. June 8, 2012), *aff'd in part*, 569 F.

App'x 125 (3d Cir. 2014) (citing *Ostrowski v. Azzara*, 111 N.J. 429, 441 (N.J. 1988)).  It is well

settled that the duty to mitigate begins upon the plaintiff's knowledge of the defendant's breach.

*Restatement (Second) of Contracts comment f (1981)* ("The injured party is expected to arrange a

substitute transaction within a reasonable time after he learns of the breach.").  There is no duty to

mitigate until the plaintiff is aware that the defendant's actions have constituted a breach.  *Koppers*

*Co. Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d. 1440, 1448 (3d Cir. 1996) ("[D]uty to mitigate its

damages arises upon defendant's breach of contract . . . [I]n the context of an insurance contract .

. . upon insurer's breach by failing to indemnify the insured, the insured has a duty to mitigate its

damages.").

Although not specifically requested, to the extent Defendants seemingly invite the Court

to also opine into the sufficiency of Plaintiffs' mitigative efforts, the Court will decline to do so.

Defendants argue that there was a warranty claim under the Policy, and Plaintiffs could have

pursued this claim but did not.  (Defs.' Moving Br. at 18.)  This argument seems to question the

adequacy of Plaintiffs' efforts, rather than determining who has the burden to mitigate damages.

At this stage, the Court will not evaluate Plaintiffs' mitigative efforts because this is more

appropriate for the factfinder.  *See Perez v. Lloyd Indus., Inc.*, Civ. No. 16-1079, 2019 WL

9584403, at *3 (E.D. Pa. Mar. 26, 2019) (denying the motion in limine on the issue of mitigation

of damages and explaining that it will be decided after the conclusion of the trial to the extent it is

necessary); *UMG Recordings, Inc. v. Escape Media Grp., Inc.*,  Civ. No. 11-8407, 2015 WL

1873098, at *8 (S.D.N.Y. Apr. 23, 2015) (allowing evidence of failure to mitigate damages *at trial*

because the jury has "broad discretion in determining how to award statutory damages and may

consider actual damages as a factor in making that determination" and "a failure to mitigate

damages may remain relevant, particularly because one purpose of statutory damages is to

approximate actual damages that are difficult to prove").   Therefore, the Court will grant

Defendants' motion.

> 6. *Testimony regarding the design specifications of the Replacement Dome is properly the subject of expert testimony, and, therefore, Plaintiffs' lay representative should be precluded from offering such testimony*

The Court finds this issue is not in dispute because Plaintiffs have conceded that they do

not intend to offer lay testimony regarding design specifications of the Replacement Dome.

Therefore, the Court will grant Defendants' motion to the extent Plaintiffs conceded.

Defendants contend that in anticipation of Plaintiffs offering testimony suggesting that the

Replacement Dome was not designed in a manner to allow for snow removal, any such evidence

must be supported by an expert.  (Defs.' Moving Br. at 19.)  Defendants add that Plaintiffs have

implicitly acknowledged the need for an expert as evidenced by the engineer they hired to rebut

Defendants' evidence.  (*Id.*)

In opposition, Plaintiffs immediately concede that they do not intend to offer lay opinion

regarding any design specifications relating to the Replacement Dome.  (Pls.' Opp'n at 20.)

Plaintiffs highlight that Defendants' use of the term "design specifications" is misleading because

"design" and "specifications" are "two distinct concepts."  (*Id.*)  Plaintiffs oppose Defendants'

conflation of the terms because removal of the accumulated snow relates to the maintenance of the

Replacement Dome, and not its design or specifications.  (*Id.*)  Plaintiffs argue that Defendants

conflates the terms "to circumvent their failure to timely disclose defective maintenance as a basis

for denying coverage."  (*Id.*)  On this point, Plaintiffs seek to preclude Defendants from introducing

evidence relating to the maintenance of the Replacement Dome.  (*Id.* at 21.)  In the alternative,

Plaintiffs argue, if evidence of maintenance were allowed, Plaintiffs would limit their witness

testimony to only discussing facts surrounding maintenance.  (*Id.*)  In this case, Plaintiffs contend

it would be appropriate for their witnesses to opine on facts surrounding maintenance and no technical expertise is required.  (*Id.* at 21–22.)  Plaintiffs conclude that if the Court were to allow such testimony, it would not violate Federal Rule of Evidence 701.  (*Id.* at 22–23.)

As stated above, Plaintiffs have conceded that no lay witnesses will be utilized in discussing the design specifications of the Replacement Dome.  The Court will, therefore, grant Defendants' motion.

**IV.    CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1.  Plaintiffs' motion to preclude evidence and testimony as to the Original Dome and insurance claim is GRANTED.

2.  Plaintiffs' motion to establish Defendants' legal burden to prove the application of exclusions is GRANTED in part and DENIED in part.  Specifically, Defendants have the legal burden of proving that an exclusion to the Policy applies.  However, Defendants do not need an expert to meet their burden.

3.  Plaintiffs' motion to preclude Defendants' from asserting any basis for denying coverage not raised in the Denial Letter is DENIED.

4.  Plaintiffs' motion to limit use of weather data relied on by expert witness Eric Cunningham is DENIED.

5.  A ruling on Plaintiffs' motion to establish authenticity is DEFERRED.

6.  Defendants' motion to admit evidence of the Original Dome and preclude evidence of the prior insurance claim is GRANTED in part and DENIED in part. Specifically, evidence of the Original Dome and prior insurance claim will be excluded.

7.  Defendants' motion to preclude evidence of Plaintiffs' alleged business interruption and extra expense damages since no expert witness has been identified is GRANTED in part and DENIED in part.  Specifically, the Court will, therefore, limit, Plaintiffs' introduction of evidence of their business interruption losses without an expert to the extent that the damage calculations do not require a projection.

8.  Defendants' motion to establish the relevant time for Plaintiffs' business interruption damages is DENIED.

9.  Defendants' motion to exclude evidence of "bad faith" is GRANTED.

10. Defendants' motion to establish Plaintiffs' burden to prove that the existence of a loss is within the scope of the Policy's insuring agreement and also to establish that the loss falls within the exception to the exclusion is GRANTED.

11. Defendants' motion to establish Plaintiffs' burden to mitigate their damages is GRANTED.

12. Defendants' motion to preclude Plaintiffs from offering lay witness regarding the design specifications is GRANTED.

An appropriate Order will accompany this Opinion.

Date: January 25, 2022

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

41